# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CLIFTON RIVERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 1:21-cv-00367-MSM-PAS |
| NICE RECOVERY SYSTEMS LLC; | ) |
| VANGUARD MEDICAL LLC; RHODE | ) |
| ISLAND FOOT CARE, INC.; | ) |
| DOUGLAS GLOD, D.P.M.; JOE DOE | ) |
| CORPORATION; & JOHN DOE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The Court considers whether a Massachusetts plaintiff has established that this Court can constitutionally exercise specific personal jurisdiction over a Colorado medical product manufacturer. The plaintiff was prescribed a medical product from a Rhode Island doctor but only used it in Massachusetts, where it allegedly injured him, after he leased it in that state from a Connecticut distributor who owned the product.

For the following reasons, the Court determines that it cannot exercise personal jurisdiction and therefore GRANTS the defendant, Nice Recovery Systems LLC's ("NRS"), Motion to Dismiss (ECF No. 40).

1

# I.   BACKGROUND

The Court granted the plaintiff, Clifton Rivers', request to conduct limited jurisdictional discovery.  What follows are the facts relevant to the Court's analysis.

NRS is a Delaware limited liability company with its principal place of business, sole office, and manufacturing facility in Colorado.  (ECF No. 40 at 30.)  It does not have any operations, locations, or employees in Rhode Island.  *Id.*

In Colorado NRS designs and manufactures a cold compression therapy system, called NICE1, that is intended to treat post-surgical and acute injuries to reduce edema, swelling, and pain.  (ECF No. 22 ¶¶ 11, 14.)  Healthcare professionals prescribe the use of a NICE1 to patients.  (ECF No. 44-5 at 6.)

In November 2019, NRS began doing business with a Connecticut company, defendant Vanguard Medical LLC, who markets, supplies, and distributes medical products to health care providers and their patients.  Vanguard sells products throughout the "northeast," a territory defined as the six New England states along with New York and New Jersey.  (ECF No. 44-6 at 8.)  When Vanguard purchases NICE1 units from NRS, Vanguard obtains ownership of the units.  (ECF No. 40 at 31.)

NRS was aware at the time it began doing business with Vanguard that Vanguard's northeast territory included Rhode Island.  NRS stated in its answers to interrogatories that it "had an informal arrangement with Vanguard whereby Vanguard purchased NICE1 devices and NRS authorized Vanguard to sell, lease, or rent the NICE1 to users of the product located in Rhode Island and other States in

which Vanguard markets the products that Vanguard sells, rents, or leases." (ECF No. 44-3 at 5.) Vanguard's 30(b)(6) designee testified that Vanguard and NRS "have a common objective in that we want to both sell and market and distribute as many units as possible and they're [NRS] the manufacturer and we're [Vanguard] the vehicle for distribution." (ECF No. 44-5 at 12.)

In 2020, NRS approved Vanguard as the exclusive distributor of the NICE1 and NRS's "preferred distribution partner" in the northeast. (ECF No. 44-9, ECF No. 50-1 at 2.) Most of NRS' customers—97%—are distributors like Vanguard. (ECF No. 44-6 at 6.) From January 2020 to May 2021, about 50% of NRS' NICE1 units were sold to Vanguard. (ECF No. 44-8.)

There is no evidence that NRS directed any of Vanguard's marketing practices in Rhode Island or itself took part in any, except for its attendance at a medical trade show or conference that occurred sometime after the events giving rise to this lawsuit.

The defendant Rhode Island Foot Care, Inc., is a medical practice located in Rhode Island. The defendant Dr. Glod is a podiatrist in that practice. NRS had no contact with Dr. Glod prior to the allegations made in this lawsuit. (ECF No. 40 at 31.) Vanguard, however, had marketed the NICE1 to Dr. Glod. (ECF No. 50-1 at 3.)

The plaintiff is a resident of Fall River, Massachusetts. On October 28, 2019, he presented to Dr. Glod in Rhode Island, for pain in his right great toe. Dr. Glod diagnosed him for bunions and recommended surgery. Dr. Glod spoke with the plaintiff about the use of a NICE1 device after surgery, to help with swelling and

healing.[1]  (ECF No. 22 ¶ 31.)

The plaintiff later obtained a NICE1 unit (specifically, serial number 3903), by leasing it from Vanguard.  (ECF No. 40 at 35.)  On November 3, 2020, Vanguard delivered the NICE1 to the plaintiff at his home in Massachusetts. (ECF No. 22 ¶ 32; ECF No. 44-1 at 3.)

The plaintiff's surgery took place on November 5, 2020, at Southern New England Surgery Center in Attleboro, Massachusetts.  (ECF No. 22 ¶ 34.)  After the surgery the medical staff at that facility secured the "therapy wrap" piece of the NICE1 on the plaintiff's right foot.  *Id.* ¶ 35.  Upon returning home to Fall River, Massachusetts, the plaintiff connected the therapy wrap on his right foot to the remainder of the NICE1 device and allegedly developed injuries.  *Id.* ¶¶ 36-37.

The plaintiff sued in this Court on the grounds of diversity jurisdiction alleging against NRS state-law claims of negligence, breach of warranty, strict tort liability, and vicarious liability.

## II.    MOTION TO DISMISS STANDARD

Under Fed. R. Civ. P. 12(b)(2), a motion to dismiss for lack of personal jurisdiction imposes the burden on the plaintiff to establish the existence of jurisdiction.  *Astro–Med, Inc. v. Nihon Kohden Am., Inc.,* 591 F.3d 1, 8 (1st Cir. 2009).  A district court may choose from three methods for determining whether a plaintiff

---

[1] Although the plaintiff alleges in his Amended Complaint that Dr. Glod "spoke with" him about the NICE1, the plaintiff also has presented evidence that Vanguard leases NICE1 devices only upon a physician's prescription.  As such, the Court will presume a prescription from Dr. Glod for the NICE1 issued.

has met its burden: prima facie, preponderance of the evidence, or an intermediate standard. *Id.*

Here, the Court applies the prima facie method. Known as the most plaintiff friendly, the prima facie method requires a court to consider only whether the plaintiff has submitted enough evidence to support personal jurisdiction. *See Astro-Med, Inc.*, 591 F.3d at 8. Properly documented evidence is accepted as true regardless of whether the defendant disputes it. *Id.* But the Court does not consider conclusory allegations or farfetched inferences. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998). The court can "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Id.*

## III.   DISCUSSION

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "To exercise personal jurisdiction over a nonresident defendant, the defendant must 'have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940)).

When considering personal jurisdiction in a diversity suit, such as here, a federal court acts as "the functional equivalent of a state court sitting in the forum state." *See Astro–Med*, 591 F.3d at 8. Because Rhode Island's "long-arm statute," R.I.G.L. § 9-5-33, authorizes Rhode Island courts to exercise jurisdiction over non-

resident defendants to the fullest extent permitted by the United States Constitution, this Court need only decided whether the assertion of personal jurisdiction accords with due process principles. *See Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990).

The Supreme Court recognizes "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). The plaintiff concedes that Rhode Island courts cannot exercise general jurisdiction over NRS. The analysis then turns to specific jurisdiction.

A court may assert specific jurisdiction over an out-of-state defendant if the plaintiff demonstrates the following factors:

> (1) [the] claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable.

*Scottsdale Cap. Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018); *see also Negron-Torres v. Verizon Commc'ns, Inc.* 478 F.3d 19, 24-25 (1st Cir. 2007) ("[T]his circuit divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness."). "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." *Scottsdale Cap. Advisors Corp.*, 887 F.3d at 20; *Phillips Exeter Acad. v. Howard Phillips Fund*, 196

F.3d 284, 288 (1st Cir. 1999) ("An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.").

## A. Relatedness

Under the relatedness prong, for a plaintiff's causes of action to "arise out of or relate to" a defendant's forum conduct, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919). Although this a "flexible, relaxed standard," *Astro-Med,* 591 F.3d 1 at 9, personal jurisdiction does not lie when the "connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." *Negron-Torres*, 478 F.3d at 25 (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005)). "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford*, 141 S. Ct. at 1026; *see also Bristol-Myers*, 582 U.S. at 264 (requiring an "adequate link" between a forum state and a nonresident's claim). Indeed, "[t]he relatedness requirement is not an open door; it is closely read, and it requires a showing of material connection." *Negron-Torres,* 478 F.3d at 25. "[T]he defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." *Harlow*, 432 F.3d at 61 (quoting *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992) (alteration in original)).

The matter here involves "no in-state injury and no injury to residents of the forum State." *See Bristol-Myers*, 582 U.S. at 266. The occurrence that gave rise to the claim was an injury in Massachusetts caused either by a defective design or manufacture, which occurred in Colorado, or a malfunction, which occurred in Massachusetts. Indeed, it is very likely that the product never entered Rhode Island. NRS sells the NICE1s to Vanguard in Connecticut who itself markets and distributes them throughout the northeast. In this case, the plaintiff entered into a lease agreement with Vanguard for a NICE1, Vanguard delivered it to the plaintiff's home in Massachusetts, and it was applied to him post-surgery in a Massachusetts hospital. He wore it at home, in Massachusetts, where he developed injury.

The one case-linked connection from Rhode Island is that of an unrelated third party, Dr. Glod, prescribing the NICE1 to the plaintiff while he was at a pre-surgical doctor's visit in Rhode Island. Dr. Glod (who, like the plaintiff, was unknown to NRS) learned of the NICE1 through Vanguard's distribution efforts, the purpose of NRS's relationship with Vanguard. But this is where the "limits" of the relatedness test become "real." Vanguard distributed the NICE1 throughout the northeast, including the plaintiff's home state, but he chose to go to a doctor in Rhode Island where the prescription of the NICE1 issued. Yet, the plaintiff's lease, application, use of the device, and the injury all occurred in Massachusetts. This Rhode Island contact is not an important or material element of proof of the plaintiff's claims against NRS and it is an attenuated and indirect connection between Rhode Island and the litigation. *See Harlow*, 432 F.3d at 61.

8

The plaintiff argues that he should satisfy the relatedness factor because the Supreme Court, in *Ford*, held that relatedness does not require a "strict causal relationship." *See* 141 S. Ct. at 1026. While true, the Supreme Court qualified that the lack of a strict causal relationship "does not mean anything goes" and is subject to "real limits." *Id.* Moreover, the Court in *Ford* considered whether there was sufficient relatedness when a product was sold outside of the forum state but "when a company ... serves a market for a product in the forum State and the product malfunctions *there*." *Id.* at 1026 (emphasis added). The Supreme Court relied upon the following dicta from *World-Wide Volkswagen Corp. v. Woodson*:

> "[i]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."

*Id.* at 1027 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

The commonality in such cases is that a product from out-of-state caused injury "there"—in the forum state. There's no "there" here. The product was used in and allegedly caused injury outside the forum, in Massachusetts, to a resident of that state. And although prescribed by a doctor in Rhode Island, the product came to the plaintiff by an agreement between him, a Massachusetts resident, and Vanguard, a Connecticut distributor. Such facts belie the "essential foundation" of specific jurisdiction: the "relationship among the defendant, the forum, and the litigation." *Ford*, 141 S. Ct. at 1028 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In other words, there is not an "adequate link" between

9

NRS's (indirect) contacts with the forum (Rhode Island) and the litigation (the plaintiff's specific claims against NRS) to satisfy the relatedness factor. *See Bristol-Myers*, 582 U.S. at 264.

A finding of a lack of relatedness also squares with the Supreme Court's holding in *Bristol-Myers*. In that case, a large group of plaintiffs sued in a California court against Bristol-Myers alleging injury from a prescription drug, Plavix, that Bristol-Myers (a Delaware company headquartered in New York) manufactured and marketed nationally. *Id.* at 258. The Court found that there was not an "adequate link" between any non-California-resident plaintiffs who, the Court noted, "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 264. But there is no indication that establishing the single connection of in-state prescription, and none of the others, creates the necessary "adequate link" between NRS, the forum, and the plaintiff's specific claims. Particularly when, as here, "the conduct giving rise to the nonresidents' claim occurred elsewhere." *Id.* at 265. Under the relatedness test the focus is whether the plaintiff's specific claims are sufficiently connected to the defendant's forum contacts. Here, the plaintiff claims are for products liability and negligence, which manifested outside of the forum. Again, "the defendant's in-state conduct must form an 'important, or [at least] material, element of proof' in the plaintiff's case." *Harlow*, 432 F.3d at 6.

Furthermore, much of the relatedness holding of *Bristol-Myers* focused on interstate federalism. *See* 582 U.S. at 262-67. This is significant because the

contours of the "real limits" of the relatedness factor recently expressed in *Ford* are not as-yet fully defined.  It is therefore helpful to keep in mind the "two sets of values" that underpin specific personal jurisdiction jurisprudence: "treating defendants fairly and protecting 'interstate federalism.'"   141 S. Ct. at 1025 (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 293 (1980)).  As to the latter value, "[t]he law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy."  *Id.* (quoting *Bristol-Myers*, 582 U.S. at 263).

Here, the federal balance supports imposing "real limits" on this relatedness inquiry.   The injury occurred in Massachusetts, to a resident of that state. *See Harlow,* 432 F.3d at 67 (finding non-forum state's "interest as a sovereign" was strong where alleged medical malpractice occurred "within its borders," and its laws would "govern th[e] dispute.")  Rhode Island's interest "is diminished [because] the injury occurred outside" its borders. *Id.*; *see also Ford*, 141 S. Ct. at 1017 (holding that because the plaintiffs used the allegedly defective products in the forum state and suffered injury there, they "brought suit in the most natural State").

Finally, the Court notes that much of the argument and jurisdictional discovery focused on whether NRS purposefully availed itself to Rhode Island.  But because the plaintiff has not satisfied the relatedness factor, this Court need not consider the remaining factors of purposeful availment and fairness.  *See Scottsdale Cap. Advisors Corp.*, 887 F.3d at 20.  Failing the relatedness factor, this Court cannot constitutionally exercise personal jurisdiction over NRS.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS NRS's Motion to Dismiss (ECF No. 40).   Because this dismissal is on jurisdictional grounds, it is made without prejudice.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge
March 15, 2023